**In re Tia A. MILLS, Debtor.**

**Farmers Insurance Exchange, Plaintiff,**

**v.**

**Tia A. Mills, Defendant.**

**Bankruptcy No. 02–14934–EEB.**

**Adversary No. 02–1212–SBB.**

United States Bankruptcy Court, D. Colorado.

March 26, 2003.

---

Wayne E. Stockton, Lakewood, CO, for Plaintiff.

Helen E. Arnold, Englewood, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Chief Judge.

THIS MATTER comes before the Court on (1) the Motion for Summary Judgment filed by Farmers Insurance Exchange ("Plaintiff") on November 13, 2002; (2) the Brief in Support of Plaintiff's Motion for Summary Judgment filed on November 13, 2002; (3) the Opposition thereto filed by Tia A. Mills ("Defendant") on December 2, 2002; (4) Defendant's Motion for Summary Judgment filed on December 2, 2002; and (5) Defendant's Combined Brief: In Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment filed on December 2, 2002. The Court, having reviewed the file and being advised in the premises, makes the following findings, conclusions and Order.

For the reasons stated herein, this Court will:

(1) GRANT the Plaintiff's Motion for Summary Judgment and

(2) DENY Defendant's Motion for Summary Judgment.

The Court will enter a Judgment in favor of the Plaintiff determining that the restitution ordered in favor of the Plaintiff and its insured, Mr. Perry D. Houston ("Mr.Houston"), in *People of the State of Colorado v. Tia Anita Mills,* Case No.2001 T 182 is not discharged under 11 U.S.C. § 523(a)(7).

## I. *ISSUE*

The issue before the Court is whether a Colorado state court's order of restitution made payable by a defendant to a victim in a criminal misdemeanor action, as part of the state court's criminal sentence, is nondischargeable under 11 U.S.C. § 523(a)(7).

The precise issue before the Court has recently been considered and decided by two Judges of this Court. The first case was decided by the late Honorable Donald E. Cordova, Chief Bankruptcy Judge for the District of Colorado, in *Hunt v. Clack (In re Clack),* Ch. 7 Case No. 01–22810–DEC, Adv. No. 01–1557 (Bankr.D.Colo. October 29, 2002). Less than two months later, the Honorable A. Bruce Campbell, Bankruptcy Judge for the District of Colorado, made a different ruling on the same issue in *Olson v. McNabb (In re McNabb),* 287 B.R. 820 (Bankr.D.Colo.2003).

Thus, there is a split of authority within the Bankruptcy Court for the District of Colorado on the issue at hand. Adding to this dissonance is the fact that courts across the United States have ruled in differing ways on this issue and, moreover, the Tenth Circuit and the District Court of Colorado have not recently addressed the issue of whether restitution made payable by a defendant in a criminal misdemeanor action to a victim as part of the state

court's criminal sentence is nondischargeable under 11 U.S.C. § 523(a)(7).

In *Clack*, the complaint was filed by a victim of a debtor's reckless driving and was brought under 11 U.S.C. § 523(a)(6) and (a)(7). Under the claim for relief under 11 U.S.C. § 523(a)(6), Judge Cordova concluded that the legislature's preemptive predetermination of the dischargeability question under 11 U.S.C. § 523(c), incorporated in the restitution statute, was inappropriate. Judge Cordova went on to conclude that, under the circumstances in the *Clack* case, the facts did not support an exception to discharge for "willful and malicious" injury. The Court nevertheless concluded that the restitution debt was not dischargeable under 11 U.S.C. § 523(a)(7). The Court relied almost exclusively on the broad holding in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), whereby the Supreme Court concluded that 11 U.S.C. § 523(a)(7) preserves restitution obligations from discharge. *See* further discussion *infra* Section IV.C.

In *McNabb*, Judge Campbell held that a criminal restitution order was dischargeable where the restitution imposed on the debtor was to and for the benefit of the victims of the debtor and not a "governmental unit." Moreover, he held that the state statute relied upon by the plaintiff's which provides that restitution debts are nondischargeable as "willful" and "malicious" was preempted by federal bankruptcy law. Further, he found that plaintiffs did not plead in their complaint nondischargeability under the "willful and malicious injury" provisions of 11 U.S.C. § 523(a)(6). *See* discussion *infra* Section IV.D.

This Court's decision, as set forth in the following pages, concurs with the legal conclusions of Judge Cordova in his *Clack* opinion and reflects a differing view from that of Judge Campbell in *McNabb* with respect to (1) applicable state law in Colorado on restitution and (2) dischargeability under 11 U.S.C. § 523(a)(7).

## II. *STANDARD FOR SUMMARY JUDGMENT*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 made applicable to adversary proceedings by Fed. R. Bankr.P. 7056. "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *Sports Unlimited, Inc. v. Lankford Enter., Inc.*, 275 F.3d 996, 999 (10th Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Here, the parties do not dispute any material facts. The only remaining question is whether either party, on their respective motions, is entitled to judgment as a matter of law.

## III. *UNDISPUTED FACTS*

On February 10, 2001, on U.S. Highway 285 in Park County, Colorado, an automobile owned and operated by Mr. Houston, the Plaintiff's insured, was involved in a motor vehicle accident with the Defendant. The Defendant had lost control of her vehicle resulting in a collision with Mr. Houston.

As a result of the accident, Defendant was issued a criminal summons and complaint, charging her with three violations:

(1) Careless Driving Resulting in Injury—COLO.REV.STAT. § 42–4–1402,

(2) Failure to Maintain Automobile Insurance—COLO.REV.STAT. § 42–4–1409 and

(3) Driving While License Suspended under the Financial Responsibility Act—COLO.REV.STAT. § 42–7–422.[1]

The criminal misdemeanor case was filed in the District Court of Park County, Colorado and was styled *People of the State of Colorado v. Tia Anita Mills,* Case No.2001 T 182. The parties agreed to the facts of the case which resulted in the entry of a minute order of restitution ("Restitution Order"). The Honorable Stanley Joseph Mayhew, by way of the Restitution Order, sentenced the Defendant to serve a 365 day jail term and imposed a fine of $1,000.00, plus court costs. The jail term and $900.00 of the fine were suspended. In addition, Judge Mayhew ordered that—as a condition of suspending the jail sentence and fine—the Defendant was to make restitution to the Plaintiff in the amount of $17,703.44 and to the Plaintiff's insured, Mr. Houston, in the amount of $5,320.00.[2] As of the date that Defendant filed her Chapter 7 petition, Plaintiff had paid $5,959.58 for property damages to the insured for vehicle repair and $26,678.15 for Mr. Houston's medical expenses.

In conjunction with the filing of the Plaintiff's Motion for Summary Judgment, the Plaintiff provided an Affidavit of Judge Mayhew. The information contained in the Affidavit is not contested by the Defendant. In the Affidavit, Judge Mayhew, states, in part, as follows:

4. Article 18.5 of the Colorado Revised Statues requires that I consider restitution in every criminal case in which there is a conviction. My restitution orders are based upon information provided by the prosecuting attorney who is required by law to compile victim impact statements and use other means to determine the amount of restitution and the identities of the victims. A defendant is given an opportunity to be heard and to present evidence on the issue at the time the order is entered.

5. § 16–18.5–103(4)(a) C.R.S. provides that **any order for restitution shall be a final civil judgment in favor of the state and *any* victim.** Payments are ordered to be paid to the probation department.

6. At the time I entered the restitution order, I considered such factors as the defendant's ability to pay; the seriousness of the offense; the circumstances surrounding the offense; the costs to the taxpayers if the victim's treatment is not paid for by the defendant; the impact on the defendant, her family, and **on society of a jail sentence; and the extent to which restitution may**

---

1. While a copy of the criminal summons and complaint are not attached to either the Plaintiff's or Defendant's Motion for Summary Judgment, it appears that neither party disputes the charges in the criminal summons and complaint as set forth by the Plaintiff.

2. The Restitution Order inexplicably was not attached to any of the pleadings. However, the parties, by their respective Motions for Summary Judgment, agree that the Restitution Order was entered as a minute order and that the exact language of the Restitution Order was:

REST ORDERED TO VIC IN THE AMOUNT OF $5,320 AND $17,703.44 TO FARMERS INS.; DEF TO PAY $100 OF $1000 FINE, $900 SUSP; ORDERED 365 DAYS JAIL, 365 DAYS SUSP; CRTC $18; $35 VAST; $35 VCMP; FOR A TOTAL OF $188; SUSP UNDER THE CONDITION THAT THE DEF PAY REST IN ACCORD WITH A SCHEDULE OF PAYMENT WITH COLLECTION INVESTIGATOR; DEF HAS TEN DAY TO CONTACT EVALUATOR; REVIEW IS SET FOR 10–2–02 AT 1 PM.

serve to rehabilitate an offender and deter future criminal behavior.

7. I may suspend a jail sentence so that restitution can be paid, since I recognize that restitution payments are unlikely to be made while someone is serving a jail sentence.

8. **Restitution to the victim is part of the punishment I impose in a criminal case, and to the extent restitution is not paid, other aspects of the sentence may be harsher.**

(emphases and italics added).

On February 6, 2002, between the time that the Restitution Order entered and before the filing of the Defendant's bankruptcy case, Plaintiff filed a "Notice of Intent to Pursue Collection by Victim" pursuant to COLO.REV.STAT. § 16–18.5–107, and assumed an active role in collecting on the Restitution Order.[3] This notice relieved the state's collection investigator from further collection action under the statute and permitted the Plaintiff to pursue collection directly. However, in accordance with COLO.REV.STAT. § 16–18.5–107(1), this bankruptcy filing did not alter the restitution as a condition of the Defendant's probation.

On April 9, 2002, the Defendant filed for relief under Chapter 7 of the Bankruptcy Code. Among the debts she seeks to discharge in bankruptcy is the debt due and owing to Plaintiff by way of the Restitution Order.

---

3. Pursuant to COLO.REV.STAT. § 16–18.5–107:

(1) Any victim in whose name a restitution order has been entered shall have a right to pursue collection of the amount of restitution owed to such person in such person's own name. Any victim who wishes to collect restitution pursuant to the provisions of this section shall first deliver to the clerk of the court or, if the defendant was sentenced to the department of corrections, to the executive director of the department of corrections a notice of intent to pursue collection. Upon receipt of notice of intent to pursue collection, the court, the collections investigator, and the department of corrections shall cease all attempts to collect the restitution due to the person or persons named in the notice, except that the collections investigator may still assist the victim in the victim's effort. **The filing of a victim's intent to pursue collection and a victim's subsequent collection efforts do not alter a court's order that restitution is a condition of the defendant's probation, and such probation may still be revoked by the court upon a finding of failure to pay restitution.**

(2) Any victim who has filed a notice of intent to pursue collection may apply to the sentencing court for issuance of any of the following that, if provided, shall be provided without cost:

(a) One or more certified copies of the transcript of the order for restitution;

(b) An order that a portion of the defendant's earnings be withheld pursuant to section 16–18.5–105(3)(b);

(c) A writ of execution, writ of attachment, or other civil process to collect upon a judgment pursuant to article 52 of title 13, C.R.S.

(3) If the victim chooses to record a copy of the transcript with a clerk and recorder or with the central indexing system board, the victim may do so without charge.

(4) A victim may withdraw his or her intent to pursue collection by filing a notice of such withdrawal with the person to whom the notice of intent was served pursuant to subsection (1) of this section. Such notice shall state the amount, if any, of restitution collected by the victim. Upon receipt of a notice of withdrawal, the collections investigator or the department of corrections shall pursue collection of the restitution pursuant to this article.

(5) The judicial department shall develop informational brochures for victims explaining the process of restitution and the victim's rights and remedies.

(emphasis added).

## IV. DISCUSSION

### A. Exceptions to Discharge Are to Be Narrowly Construed

 This Court is to narrowly construe any exceptions to discharge so as to carry out the fresh start policy of the Bankruptcy Code. *In re Tilley*, 286 B.R. 782 (Bankr.D.Colo.2002). Nevertheless, courts have recognized the overarching objective of limited federal interference in state criminal adjudications. The Supreme Court, in *Kelly v. Robinson*, expressed this objective:

> Our interpretation of the Code also must reflect the basis for this judicial exception, **a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. This Court has emphasized repeatedly "the fundamental policy against federal interference with state criminal prosecutions."**

479 U.S. 36, 47, 107 S.Ct. 353, 360, 93 L.Ed.2d 216 (1986) (emphasis added).

This Court recognizes, as it has in the past, the long-standing tradition of restraint by bankruptcy courts and the policy of non-interference with state court convictions. *See, e.g., In re Norman*, 95 B.R. 771, 772 (Bankr.D.Colo.1989) (this Judge held that duly assessed criminal fines and penalties, which are of punitive, remedial or rehabilitative nature, and not of strictly compensatory nature, are not dischargeable in a Chapter 13 case). The Court must weigh and balance the seemingly divergent interests of the fresh start policy of the Code with the goal of not vitiating the results in the state court criminal proceeding.

### B. Three–Part Test of 523(a)(7)

 When a court interprets a statute such as the Bankruptcy Code, the court begins with the statutory language itself. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). When the language of a statute is plain and unambiguous, the statute must be enforced according to its terms. *Id.* 11 U.S.C. § 523(a)(7) provides that "a discharge under section 727 ... does not discharge an individual debtor from any debt—

> to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty ..."

Thus, under 11 U.S.C. § 523(a)(7), a creditor must show three things, that is:

(1) the debt sought to be determined nondischargeable is for a fine, penalty, or forfeiture,

(2) the debt is payable to and for the benefit of a governmental unit, and

(3) such debt is not compensation for an actual pecuniary loss, other than a tax penalty.

*See Whitehouse v. LaRoche*, 277 F.3d 568, 573 (1st Cir.2002).

The Supreme Court, when it previously analyzed Section 523(a)(7), focused on the statutory language itself and concluded:

> Of course, the "starting point in every case involving the construction of a statute is the language itself." But the text is only the starting point. As Justice O'Connor explained last Term: "'"In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."'" **In this case we must consider the language of §§ 101 and 523 in light of the history of the bankrupt-**

cy court deference to criminal judgments and in light of the interest of the State in unfettered administration of their criminal justice systems.

*Kelly v. Robinson,* 479 U.S. 36, 43–44, 107 S.Ct. 353, 357–58, 93 L.Ed.2d 216 (citations omitted) (emphasis added).

### C. *Hunt v. Clack (In re Clack)*

A discussion of the within adversary proceeding is not complete without addressing *Hunt v. Clack (In re Clack),* Ch. 7 Case No. 01–22810–DEC, Adv. No. 01–1557 (Bankr.D.Colo. October 29, 2002) and *Olson v. McNabb (In re McNabb),* 287 B.R. 820 (Bankr.D.Colo.2003).

In *Clack,* the plaintiff and the defendant were involved in a car accident on an icy road. As a consequence of the accident, the defendant was cited for driving without a valid license and careless driving—facts virtually identical to the present matter. The defendant pleaded not guilty to the misdemeanor offenses alleged and the matter proceeded to trial. Although the state court dismissed the count for driving without a license, the court found the defendant guilty of careless driving. In conjunction with the conviction, the state court entered a probation order on June 14, 2001. The state court sentenced the defendant to twelve months of unsupervised probation and, as a condition of her probation, the court ordered the defendant to pay a fine of $35.00, a $25.00 surcharge, and $43.00 in costs. The state court also ordered the defendant to make restitution in the amount of $3,857.07 payable to the clerk of the state court. The state court clerk was to thereafter distribute the restitution to the plaintiff. The defendant thereafter filed for relief under Chapter 7 of the Bankruptcy Code. Plaintiff filed his complaint to seek a determination that the restitution was not dischargeable under 11 U.S.C. § 523(a)(6) and (a)(7).

Under the claim for relief under 11 U.S.C. § 523(a)(6), Judge Cordova concluded that the legislature's predetermination of the dischargeability question under 11 U.S.C. § 523(c) " 'would allow the exclusive jurisdiction of the bankruptcy courts over core proceedings to be divested by operation of state law and would be inimical to the philosophy underling the Bankruptcy Code.' " (quoting *Resolution Trust Corp. v. McKendry (In re McKendry),* 40 F.3d 331, 335 (10th Cir.1994)). Judge Cordova went on to conclude that, under the circumstances in the *Clack* case, the facts did not support an exception to discharge for "willful and malicious" injury. The Court, relying on *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), nevertheless concluded that the restitution debt was not dischargeable under 11 U.S.C. § 523(a)(7).

### D. *Olson v. McNabb (In re McNabb)*

In *Olson v. McNabb (In re McNabb),* 287 B.R. 820 (Bankr.D.Colo.2003), the plaintiffs were victims of a crime committed by the defendant. The court found, quoting paragraph 4 of the Complaint, that, based upon the allegations of the complaint, "Defendant was sentenced to a fine, probation and an Order of Restitution *to be paid to the Plaintiffs.*" In his decision, Judge Campbell noted that "[t]he Complaint indicates that the Order of Restitution is attached as Exhibit A to the Complaint. However, no Order of Restitution is in the Court's record." *McNabb,* 287 B.R. at 821 n. 1.

After the time for filing an answer had elapsed, the plaintiffs in *McNabb* filed their motion for entry of default judgment. In his Order denying the motion for default judgment and dismissing the adversary proceeding, Judge Campbell concluded that plaintiffs were not a "governmental unit" and, therefore, under the express

terms of 11 U.S.C. § 523(a)(7), a restitution obligation payable to plaintiffs from a criminal proceeding was dischargeable. *Id.*

■ Based (1) upon the procedural posture and facts of *this* case; (2) the particular Restitution Order entered by Judge Mayhew under the Colorado restitution statute; (3) the Affidavit of Judge Mayhew, the presiding Park County Judge, submitted with the Plaintiff's Motion for Summary Judgment; (4) this Court's view of 11 U.S.C. § 523(a)(7); and (5) this Court's reliance on (a) *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), (b) *Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), (c) the inaction of Congress to amend 11 U.S.C. § 523(a)(7) after *Kelly* and *Davenport,* and (d) subsequent modifications to other sections of the Bankruptcy Code— i.e. 11 U.S.C. §§ 523(a)(13) and 1328(a)(3)—intended to make clear that restitution is not dischargeable in bankruptcy, this Court concludes that the Restitution Order, here, should be nondischargeable.

E. *Goals and Intent of the State Criminal Restitution Statute, Intent of the Criminal Court Judge, and Propriety of Interference in State Criminal Proceedings*

■ This Court concurs with the conclusions of both Judge Campbell and Judge Cordova that the Colorado legislature cannot, in an unfettered fashion, preempt federal bankruptcy law and protect from discharge certain debts. *In re McNabb,* 287 B.R. 820, 822 (Bankr.D.Colo.2003) and *Hunt v. Clack (In re Clack),* Ch. 7 Case No. 01–22810–DEC, Adv. No. 01–1557 (Bankr.D.Colo. October 29, 2002). Never-

theless, 11 U.S.C. § 523(a)(7) must be viewed in light of the "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings" and state criminal statutes. *Kelly,* 479 U.S. at 47, 107 S.Ct. at 360. Moreover, this Court is mindful of "the fundamental policy against federal interference with state criminal prosecutions." *Id.* (quoting *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971)).

It could not be more clear and explicit that the Colorado legislature has intended that state court restitution orders *not* be discharged in bankruptcy. It is equally clear and explicit that the state has designed and drafted its criminal restitution statute to be nondischargeable in bankruptcy. This is manifest in the statutory language at COLO.REV.STAT. § 16–18.5–103(4)(a), (c) and (d) which provides:

(4) (a) Any order for restitution entered pursuant to this **section shall be a final civil judgment in favor of the state and any victim.** Notwithstanding any other civil or criminal statute or rule, **any such judgment shall remain in force until the restitution is paid in full.**

(c) **The entry of an order for restitution under this section creates a lien by operation of law against the defendant's personal property** and any interest that the defendant may have in any personal property.

(d) **Any order of restitution imposed shall be considered a debt for "willful and malicious" injury for purposes of exceptions to discharge in bankruptcy as provided in 11 U.S.C. sec. 523.**

(emphases added).[4]

Additionally, based upon the affidavit of Judge Mayhew, it appears that, if he be-

---

**4.** At the time of the entry of the Restitution Order, the statute in effect was COLO.REV.STAT.

lieved that there was the potential of a future discharge of the restitution obligation in bankruptcy or otherwise, other aspects of the sentence would have been harsher, e.g., the one-year jail sentence might not have been suspended.

### F. Goals and Intent of Congress in Enacting 11 U.S.C. § 523(a)(7)

#### i. Congress Expects Its Statutes to be Read in Conformity with Court Precedent

■ There are at least two approaches a court can take when analyzing Congressional actions. One approach is that "Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994) (quoting *Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 338, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994)). Another approach, to which this Court adheres in this case, holds that there is a presumption "that Congress expects its statutes to be read in conformity with th[e] Court's precedents." *Porter v. Nussle*, 534 U.S. 516, 528, 122 S.Ct. 983, 990, 152 L.Ed.2d 12 (2002) (quoting *United States v. Wells*, 519 U.S. 482, 495, 117 S.Ct. 921, 929, 137 L.Ed.2d 107 (1997)). As discussed below, this Court would discern—from the absence of changes to 11 U.S.C. § 523(a)(7), the addition of 11 U.S.C. § 523(a)(13) to the Bankruptcy Code, the changes to 11 U.S.C. § 1328, and the legislative history—that Congress was content with the conclusion of the Supreme Court in *Kelly* and *Davenport* that restitution obligations are not dischargeable under 11 U.S.C. § 523(a)(7) and that the statute need not be disturbed.

#### ii. Congressional Response to Kelly v. Robinson

The purposes and intent of the drafters of the Bankruptcy Code would be defeated if this debt was dischargeable. As the Supreme Court stated in *Kelly v. Robinson*, with respect to restitution imposed by state court judges, "[w]e do not think Congress lightly would limit the rehabilitative and deterrent options available to state criminal judges." 479 U.S. 36, 49, 107 S.Ct. 353, 361, 93 L.Ed.2d 216 (1986). The Supreme Court went on to say that "we hold that § 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence." 479 U.S. at 50, 107 S.Ct. at 362.

After *Kelly*, the Retiree Benefits Bankruptcy Protection Act of 1988 was considered and passed by the House and the Senate. Pub.L. No. 100–334, 102 Stat. 610–613 (June 16, 1988) (codified as amended as 11 U.S.C. § 1114). In the original version of the Act, the Committee on the Judiciary in the Senate Report set forth that the purpose of Title III of the Retiree Benefits Bankruptcy Protection Act of 1988 was "to make nondischargeable any debt arising from judgment or consent decree requiring an individual debtor to make restitution as a result of a violation of State law." S. Rep No. 119, 100th Cong., 2d Sess 8–9 (1988), U.S.Code Cong. & Admin.News 1988, pp. 683, 691. While this portion of the Act was not included in the Act eventually passed, the Committee on the Judiciary's understanding of *Kelly* seems clear—that is, 11 U.S.C. § 523(a)(7), as construed by the Supreme Court, excludes restitution from discharge.

§ 16–18.5–103 which was renumbered to COLO REV.STAT. § 18–1.3–603, effective October 1, 2002.

In its discussion of Title III of the Retiree Benefits Bankruptcy Protection Act of 1988, the Committee stated:

> In 1986, the Supreme Court held that 11 U.S.C. 523(a)(7) preserves from discharge in Chapter 7 any condition—including restitution—a state criminal court imposes as part of a criminal sentence. *Kelly v. Robinson,* 479 U.S. 36, [93 L.Ed.2d 216], 107 S.Ct. 353 (1986). This title codifies *Kelly* and is addressed to the current ability of debtors to discharge civil restitution orders in bankruptcy. (footnote and citation omitted).
>
> . . .
>
> Accordingly, this title is very straightforward. It [the proposed legislation] makes nondischargeable any debt arising from a judgment or consent decree requiring a debtor to make restitution as a result of a violation of law. A conforming amendment incorporates this change to cases filed under Chapter 13 of Title 11.

S. Rep No. 119, 100th Cong., 2d Sess 8–9 (1988), U.S.Code Cong. & Admin.News 1988, pp. 683, 690–91.

### iii. *Pennsylvania Department of Welfare v. Davenport and Subsequent Congressional Action*

In 1990, the Supreme Court, in *Pennsylvania Department of Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), held that state court criminal restitution orders were dischargeable in cases under Chapter 13. As part of its analysis, the Supreme Court ended the conflict among lower courts as to whether criminal restitution obligations fall within the definition of "debt" and "claim." 495 U.S. at 557–60, 110 S.Ct. at 2130–32. The Court concluded that criminal restitution obligations *were* "debts" and *were* dischargeable under Chapter 13. *Id.*

The Supreme Court also acknowledged that restitution orders fall within the exception to discharge in 11 U.S.C. § 523(a)(7). *Id.* (citing *Kelly v. Robinson,* 479 U.S. at 53, 107 S.Ct. at 363). The Court also recognized that Congress intended to secure a broader discharge for debtors under Chapter 13 than Chapter 7 by extending to Chapter 13 debtors some, but not all, of the exceptions to discharge as set forth under 11 U.S.C. § 523(a). 495 U.S. at 563, 110 S.Ct. at 2133. Consequently, the Court held that, in the absence of any exception to discharge language in Chapter 13 comparable to the exception in 11 U.S.C. § 523(a)(7), criminal restitution debts were dischargeable in Chapter 13 cases.

Following *Davenport,* the Senate and House almost immediately went to work to ensure that criminal restitution was not dischargeable under Chapter 13 also. The Criminal Victims Protection Act of 1990, which was enacted as part of the Crime Control Act of 1990, Pub.L. No. 101–647, 104 Stat. 4789 (1990), added 11 U.S.C. § 1328(a)(3).[5]

The Senate Judiciary Committee Report which accompanied this legislation stated the following:

> **the United States Supreme Court held in** *Kelly v. Robinson,* 479 U.S. 36, [107 S.Ct. 353, 93 L.Ed.2d 216] (1986), **made debts from criminal restitution nondischargeable. Congress intends not to disturb the Court's holding in** *Kelly.*
> 136 Cong. Rec. E. 3685 (daily ed. Sept. 13, 1985) (emphasis added).

---

**5.** The Honorable Charles E. Schumer of New York, in addressing the inaction of Congress with respect to 11 U.S.C. § 523(a)(7), stated:

> Another proposed new paragraph to section 523(a) would have described debts from criminal restitution. **This proposed new paragraph was rejected as overlapping entirely with current section 523(a)(7), which**

[T]his amendment will have the effect of overruling the Supreme Court's recent decision in *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), which held that criminal restitution obligations are dischargeable debts under Chapter 13.... **Importantly, these provisions will prevent Federal bankruptcy courts from invalidating the results of State criminal proceedings.**

S.Rep. No. 434, 101 Cong., 2d Sess. 8 (1990), *reprinted in* 1990 U.S.C.C.A.N. 4065, 4071 (emphasis added).

In addition, the House of Representatives Report stated the following:

Section 1902 responds to the May 29, 1990 *Pennsylvania Department of Public Welfare v. Davenport* decision, in which the Supreme Court of the United States ruled that criminal restitution debts are dischargeable upon completion of a Chapter 13 reorganization plan. Section 1902 corrects this result by adding a new paragraph (3) to Section 1328(a) so that criminal restitution payments will be nondischargeable in Chapter 13.

Section 1902 is not intended to alter in any way the coverage of section 523(a)(7), as that paragraph has been interpreted in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), to make criminal restitution obligations nondischargeable in Chapter 7. **As a result of the change made in Section 1902, no debtor with criminal restitution obligations will be able to discharge them through any bankruptcy proceeding.**

H.R.Rep. No. 681(I), 101 Cong., 2d Sess. 165 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6571 (emphasis added); *Hardenberg v. Virginia Dept. of Motor Vehicles (In re Hardenberg)*, 42 F.3d 986, 992 n. 6 (6th Cir.1994).

As a result of the legislation in 1990, 11 U.S.C. § 1328(a)(3) excluded from discharge in Chapter 13 cases, debts for "restitution included in a sentence on the debtor's conviction of a crime." This amendment limited the impact of *Davenport* in those instances when a debt was for restitution as part of a criminal conviction, making the same nondischargeable.

Thereafter, not completely content with the language of 11 U.S.C. § 1328(a)(3), Congress again amended the language of this provision as part of the comprehensive Bankruptcy Reform Act of 1994. Pub.L. No. 103–394, 108 Stat. 4106 (1994). The amendment added the words "or criminal fine" to the subsection.

Also, in 1994, Congress enacted the Violent Crime Control and Law Enforcement Act of 1994, which, among other things, added paragraph 13 to Section 523(a). Pub.L. No. 103–322, § 320934 (1990). By its terms, however, 11 U.S.C. § 523(a)(13) only applies to restitution orders issued for a criminal offense under Title 18 of the United States Code.

It is evident that Congress has demonstrated its intent to make restitution obligations nondischargeable by adding 11 U.S.C. § 523(a)(13) and adding and subsequently amending Section 1328(a)(3) since *Kelly* and *Davenport*. While Congress has not amended 11 U.S.C. § 523(a)(7) since *Kelly*, it seems that Congress is not dissatisfied with, nor does it want to disturb the Supreme Court's holding in *Kelly* making criminal restitution in Chapter 7 cases nondischargeable. Moreover, as a practical matter and as a general rule, the so-called "super-discharge" of Chapter 13 is much broader than a discharge available to

a debtor in Chapter 7. *See, generally,* 11 U.S.C. § 1328. To permit the discharge, here, in a Chapter 7 case, where it would *not* be discharged in a Chapter 13 case would be wholly inconsistent and anomalous with bankruptcy theory and practice.[6]

G. *The Debt is for a "Fine, Penalty, or Forfeiture"*

The parties agree that the debt sought to be determined nondischargeable is, indeed, for a "fine, penalty, or forfeiture." The language of the Colorado statute would also confirm this conclusion. Colo.Rev.Stat. § 16–18.5–101 et seq.,[7] by

**6.** This anomaly in the law was acknowledged by Senator Charles Grassley in his Congressional Record Statements to Pub.L. No. 101–647 (Nov. 29, 1990):

Typical of the shortcoming is found in the absence of any provision on bankruptcy nondischargeability of certain debts in the nature of restitution. The House language before us—unlike the Senate counterpart—fails to even codify the Supreme Court's decision in *Kelly v. Robinson,* 479 U.S. 36, [107 S.Ct. 353, 93 L.Ed.2d 216] (1986), so as to make unambiguous that chapter 7 of the Bankruptcy Code prohibits discharge of criminal restitution.

The title also leaves a giant remaining loophole for dishonest debtors in chapter 13, by failing to reverse *Pennsylvania v. Davenport,* [495 U.S. 552,] 110 S.Ct. 2126, [109 L.Ed.2d 588] (1990) thus permitting convicted felons to discharge their obligations to victims and/or the State, merely by filing a bankruptcy. As Justices Blackmun and O'Connor wrote in their dissenting opinion, this result invites the Code to be "used as a shield to protect a criminal from punishment for a crime." Not surprisingly Mr. President, the filing of chapter 13 bankruptcy by an assortment of welfare cheats, crooks, and even violent criminals has become a kind of "growth industry" in the wake of Davenport.

Senate language on both of these points, as well as on preventing the discharge on civil restitution owed to the Government in consumer protection and environmental cleanup cases, is strongly supported by the National Association of Attorneys General. Law enforcement officials understand how the closing of such loopholes is important to protecting crime and fraud victims in the States, while at the same time preserving a judge's discretion to continue to order restitution as an alternative sentence to incarceration in criminal cases. As the dissenters in *Davenport* reasoned:

The judgment of sentencing courts and legislators that rehabilitation is the most

effective form of punishment will be tempered by the knowledge that convicted criminals easily may avoid a sentence requiring restitution merely by obtaining a chapter 13 discharge. Sentencing courts will be faced with a dilemma. The sentencing judge must either risk that a Federal bankruptcy judge will undermine a restitution order, thus absolving the convicted criminal from punishment, or impose a harsher and less appropriate term of imprisonment, a sentence that the Federal bankruptcy court will be unable to undermine. Congress surely would not have enacted legislation with such an extraordinary result without at least some discussion of its consequences.

I agree that this is an anomalous result; a consequence that has already lead judges to incarcerate those for whom a restitution order would suffice. I am very disappointed in this outcome and will seek to address it yet again next session.

But the hour is late in the 101st Congress. And while I will continue to work to see that additional reforms are made in the future, the country needs these procedures now. We must take whatever steps we can now to enhance our debt collection efforts. If the current budget stalemate teaches us anything, it is that this country needs to effectively manage its revenues, including collecting on loans it made long ago at below market rates.

136 Cong. Rec. S17603 (daily ed Oct. 27, 1990).

**7.** This statute was repealed and relocated to Colo.Rev.Stat. § 18–1.3–601, effective October 1, 2002. The statutory language, however, has not changed. Colo.Rev.Stat. § 16–18.5–101 provides that:

(1) The general assembly finds and declares that:

(a) Crime victims endure undue suffering and hardship resulting from physical injury, emotional and psychological injury, or loss of property;

its own terms is penal in nature and case law in Colorado has confirmed the same. *See e.g., People v. Shepard,* 989 P.2d 183 (Colo.App.1999) and *People v. Woodward,* 989 P.2d 188 (Colo.App.1999). While the language of the Colorado statute and the holding of the Park County Court are not necessarily binding on this Court, it appears that, in this instance, the restitution ordered by the Park County Court is, without doubt, intended to be a criminal "fine or penalty." Thus, the first criterion for nondischargeability has been satisfied.

### H. *The Debt is, in Effect, Payable to and for the Benefit of a Governmental Unit*

Plaintiff herein makes no contention that it is, in fact, a governmental unit. It is an

(b) Persons found guilty of causing such suffering and hardship should be under a moral and legal obligation to make full restitution to those harmed by their misconduct;

(c) The payment of restitution by criminal offenders to their victims is a mechanism for the rehabilitation of offenders;

(d) Restitution is recognized as a deterrent to future criminality;

(e) An effective criminal justice system requires timely restitution to victims of crime and to members of the immediate *families of such victims in order to lessen* the financial burdens inflicted upon them, to compensate them for their suffering and hardship, and to preserve the individual dignity of victims;

(f) Former procedures for restitution assessment, collection, and distribution have proven to be inadequate and inconsistent from case to case;

(g) The purposes of this article are to facilitate:

(I) The establishment of programs and procedures to provide for and collect full restitution for victims of crime in the most expeditious manner; and

(II) The effective and timely assessment, collection, and distribution of restitution requires the cooperation and collaboration of all criminal justice agencies and departments.

(2) It is the intent of the general assembly that restitution be ordered, collected, and disbursed to the victims of crime and their immediate families. Such restitu-

insurance company furnishing mandatory Personal Injury Protection ("PIP") coverage and insurance. As an insurer, it is also a "victim" as defined by Colorado statute.[8]

Under *In re McNabb,* since the Plaintiff is not a governmental unit, the inquiry would stop here and the restitution would be determined dischargeable. 287 B.R. at 821. However, in analyzing the statute in *Kelly,* the Supreme Court, in dicta, suggested that 11 U.S.C. § 523(a)(7) may be applicable to entities that were not *per se* governmental units.[9] The Supreme Court reasoned that:

tion will aid the offender in reintegration as a productive member of society. This article shall be liberally construed to accomplish all such purposes.

8. Colorado defines a "victim" for the purposes of restitution as

any person aggrieved by the conduct of an offender and includes but is not limited to the following:

(I) Any person against whom any felony, misdemeanor, petty, or traffic misdemeanor offense has been perpetrated or attempted;

(II) Any person harmed by an offender's criminal conduct in the course of a scheme, conspiracy, or pattern of criminal activity;

(III) **Any person who has suffered losses because of a contractual relationship with, including but not limited to an insurer...**

COLO.REV.STAT. § 16–18.5–102(4)(a)(emphasis added). At the time of the entry of the Restitution Order, the statute in effect was COLO.REV.STAT. § 16–18.5–102 which was renumbered to COLO.REV.STAT. § 18–1.3–602, effective October 1, 2002.

9. In *Kelly v. Robinson,* the restitution debt was owed and payable only to agencies of the State of Connecticut. It is in the Court's extensive discussion, in dicta, wherein the Court concludes that 11 U.S.C. § 523(a)(7) might apply to non-governmental units.

It must be noted that contrary results were reached in at least two often-cited cases.

Because criminal proceedings focus on the State's interest in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State. Similarly, they are not assessed "for ... compensation" of the victim. The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of 523(a)(7).

*Kelly*, 479 U.S. at 53, 107 S.Ct. at 363. Based on *Kelly* and for the several reasons stated below, this Court concludes that the restitution is, *in effect,* "payable to and for the benefit of a governmental unit."

First, the express purpose of the Colorado restitution statute embodies explicit benefits inuring to the state, that is: (1) rehabilitation of offenders, (2) deterring future criminality, and (3) aiding the offender in his or her reintegration as a productive member of society. Colo.Rev. Stat. §§ 16–18.5–101(1)(c),(d) and 16–18.5–101(2).

Second, the Restitution Order, by operation of the statute relied upon and as intended by Judge Mayhew, is in favor of the state. Pursuant to Colo.Rev.Stat. § 16–18.5–103(4)(a):

**Any order for restitution entered pursuant to this section shall be a final civil judgment in favor of the state and any victim.** Notwithstanding any other civil or criminal statute or rule, any such judgment shall remain in force until the restitution is paid in full.

(emphasis added). In this case, the original action was not initiated or pursued as a civil matter. Instead, it was a criminal case brought by the State of Colorado against the Defendant. Moreover, the criminal restitution statute relied upon by the Court in the Restitution Order is conjunctive in making the judgment in favor of the **state and the victim**.

Third, the principal and primary statutory mechanism for enforcement of court restitution orders is placed in the state. A detailed and extensive statutory framework for a state "collection investigator" and collection procedure is implemented by and for the state. *See,* Colo.Rev.Stat. § 16–18.5–101 through 106. Actual collection of a restitution order is, only as a secondary or alternative tool, accorded to a third-party victim. *See,* Colo.Rev.Stat. § 16–18.5–107.

Fourth, restitution paid to a private victim under the Colorado statute is still paid for the benefit of the government. The statute is intended, in principal part, for "criminal deterrence" and "rehabilitation of offenders." Colo.Rev.Stat. § 16–18.5–101. The State of Colorado—i.e. the "government"—receives the benefit of criminal deterrence and protection of its citizens. *C.f., In re Rashid,* 210 F.3d 201, 207 (3d Cir.2000) (although the court concluded that restitution paid to a private victim was dischargeable under 11 U.S.C.

---

First, in *In re Towers,* 162 F.3d 952, 953–54 (7th Cir.1998), *cert. denied,* 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999), the Seventh Circuit concluded that a civil restitution award under the Illinois Consumer Fraud and Deceptive Business Practices Act was dischargeable even though payable to the state attorney general since the attorney general was to distribute the restitution to the victims. Second, in *In re Rashid,* 210 F.3d 201 (3rd Cir.2000), the Third Circuit concluded that a federal restitution order entered prior to the enactment of 11 U.S.C. § 523(13) was held to be dischargeable because the debt was owed to private victims and therefore it was not "to or for the benefit of a governmental unit."

§ 523(a)(7), the Third Circuit did acknowledge that "[a]rguably, restitution paid to a private victim is still paid for the benefit of the Government—i.e., the Government receives the benefit of criminal deterrence").

Fifth, the Colorado restitution statute offers the state courts flexibility in tailoring criminal penalties and remedies. The Affidavit of Judge Mayhew also reflects that he considered, at the time he entered the restitution order:

> such factors as the defendant's ability to pay; the seriousness of the offense; the circumstances surrounding the offense; the costs to the taxpayers if the victim's treatment is not paid for by the defendant; the impact on the defendant, her family, and on society of a jail sentence; and the extent to which restitution may serve to rehabilitate an offender and deter future criminal behavior.

For this Court to allow a discharge of debts encompassed in the Restitution Order, would be to defeat the purpose of the Colorado criminal restitution statute, and completely ignore Judge Mayhew's reasoning and decision in imposing the criminal sentence.[10]

Sixth, in *Kelly,* the Supreme Court explained:

> Although restitution does resemble a judgment " for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. **Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant.**

479 U.S. at 53, 107 S.Ct. at 362. The Court went on to say:

> Because criminal proceedings focus on the State's interest in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution ordered imposed in such proceedings operate "for the benefit of" the State.

*Id.*

COLO.REV.STAT. § 16–18.5–101 provides that the goals of the imposition of restitution as part of a criminal sentence are to rehabilitate the offenders and to deter future criminal actions. Based upon the above reasoning, this Court concludes that the restitution debt is, in effect, payable to and for the benefit of the State of Colorado.

## I. The Debt Is Not, Exclusively or Primarily, Compensation for an Actual Pecuniary Loss

This Court also concludes, consistent with the language of the state statute and with Judge Mayhew's Restitution Order and his Affidavit, that because the criminal proceedings focused on the State's interest in rehabilitation and punishment, instead of the victims desire for compensation, the Restitution Order is not assessed to compensate for an actual pecuniary loss.[11] The reasoning of the Supreme Court in

---

**10.** Although not addressed by the parties in this case, COLO. REV. STAT. § 18–1.3–603(d) provides that "[a]ny order of restitution imposed shall be considered a debt for 'willful and malicious' injury for purposes of exceptions to discharge in bankruptcy as provided in 11 U.S.C. sec. 523."

**11.** This Court does recognize, however, that at least an element to be considered in restitution is "to lessen the financial burdens inflicted upon [the victims and their families], to compensate them for their suffering and hardship, and to preserve the individual dignity of victims." COLO.REV.STAT. § 16–18.5–101(1)(e). *See also,* COLO.REV.STAT. § 16–18.5–102 (repealed and relocated to COLO.REV.STAT. § 18–1.3–602, effective October 1, 2002)

*Kelly* and *Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) was relied upon by the Fourth Circuit in *U.S. Dept. of Housing and Urban Dev. v. Cost Control Mktg. & Sales Mgmt.,* 64 F.3d 920 (4th Cir.1995), *cert. denied, sub nom. Cost Control Marketing & Sales Management v. Cisneros,* 517 U.S. 1187, 116 S.Ct. 1673, 134 L.Ed.2d 777 (1996), wherein the Court concluded that:

> We interpret these cases [*Kelly* and *Davenport*] to say that so long as the government's interest in enforcing a debt is *penal,* it makes no difference that injured person may thereby receive compensation for pecuniary loss. In other words, the "not compensation for actual pecuniary loss" phrase in § 532(a)(7) refers to *the government's pecuniary loss.*

(emphasis in the original).

This Court agrees with the Fourth Circuit and concludes that, here, the government's interest in enforcing a debt is *penal.* Consequently, it makes no difference that injured person or entity—here, the insurer of Mr. Houston and a "victim" as defined by state statute—receives compensation for pecuniary loss. It is not the government that is being compensated for its pecuniary loss. Instead, the restitution is a part of a criminal sentence and is mechanism to rehabilitate the Defendant and deter future criminality.

## V. CONCLUSION

Based upon the above and foregoing, this Court concludes that the restitution debt is: (1) for a fine, penalty, or forfeiture, (2) in effect, payable to and for the benefit of a governmental unit, and (3) not compensation for an actual pecuniary loss. As a consequence, it is not dischargeable pursuant to 11 U.S.C. § 523(a)(7).

IT IS THEREFORE ORDERED that:

(1) The Plaintiff's Motion for Summary Judgment is GRANTED and

(2) Defendant's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that the restitution ordered in favor of the Plaintiff and its insured in *People of the State of Colorado v. Tia Anita Mills,* Case No.2001 T 182 is determined nondischargeable. The Clerk of the Court may close this adversary once this Order becomes final and non-appealable.